UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GERALD R. LECHNER,

Plaintiff,

v.

LVMPD, *et al.*

Defendants.

Case No. 2:19-cv-00638-RFB-VCF

**ORDER**

## I.   INTRODUCTION

Before the Court are two motions: Defendants Christopher J. Kopf, Las Vegas Metro Police Department ("LVMPD"), Andre A. McFarland, Christopher R. O'Connell, Clint W. Owensby, Jonathan M. Riddle, and Dillon A. Wedewer's (collectively, "Defendants") MOTION for Summary Judgment (ECF No. 111) and Plaintiff Gerald R. Lechner's MOTION for Partial Summary Judgment (ECF No. 115).

For the foregoing reasons, Defendants' motion is granted in part and denied in part and Plaintiff's motion is denied.

## II.   PROCEDURAL BACKGROUND

Plaintiff filed his original complaint on April 12, 2019. ECF No. 1. The Court then directed him to file an amended complaint. See ECF No. 35. On April 8, 2020, Plaintiff filed the first amended complaint ("FAC"), suing only Defendant LVMPD. ECF No. 37. Plaintiff manually filed exhibits cited in the FAC. ECF No. 40. On July 21, 2020, Plaintiff filed a motion to amend the FAC to name O'Connell, Owensby, Riddle, Kopf, Weder, and McFarland ("Defendant officers") in their individual and official capacities. On March 22, 2021, the Court denied Defendants'

1    motion to dismiss Plaintiff's FAC without prejudice. ECF No. 87. The Court also granted

2    Plaintiff's motion to amend the FAC to add the Defendant officers.

3          On March 24, 2021, Plaintiff filed a second amended complaint ("SAC"). ECF No. 88. The

4    SAC alleges malicious prosecution against all Defendants ("First Cause of Action"), deprivation

5    of property without due process against all Defendants ("Second Cause of Action"), unreasonable

6    search and seizure against all Defendants ("Third Cause of Action"), and First Amendment

7    retaliation against all Defendants ("Fourth Cause of Action"). Id. The SAC cites to the same

8    exhibits, including the manual filing filed, that are cited to in the FAC. In fact, other than the

9    addition of the Defendant officers as named defendants to this case, the SAC is similar to the FAC

10   in all other respects.

11         On October 4, 2021, Defendants filed a Motion for Summary Judgment. ECF No. 111.

12   Plaintiff filed a Response, and Defendants filed a Reply. ECF Nos. 121, 128.  Two days later,

13   Plaintiff filed a Motion for Partial Summary Judgment. ECF No. 115. Defendants filed a Response,

14   and Plaintiff filed a Reply. ECF Nos. 122, 126.

15         On July 13, 2022, the Court held a motion hearing regarding these motions. See ECF Nos.

16   135, 136, 137. This Order follows.

17

18         **III.    LEGAL STANDARD**

19         Summary judgment is appropriate when the pleadings, depositions, answers to

20   interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

21   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

22   Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering

23   the propriety of summary judgment, the court views all facts and draws all inferences in the light

24   most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir.

25   2014). If the movant has carried its burden, the non-moving party "must do more than simply show

26   that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a

27   whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

28   issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation

marks omitted).

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. <u>Zetwick v. County of Yolo</u>, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### IV.   FACTUAL BACKGROUND

Before the Court addresses the factual record undergirding the cross motions for summary judgment, it will first address disputes raised as to the admissibility of evidence relied on by Plaintiff.

#### a.   Admissible Evidence Relied on by Plaintiff

Defendants assert that Plaintiff's failure to provide admissible evidence in his motion for partial summary judgment and in his opposition to their summary judgment motion is fatal to his filings. Specifically, Defendants contend that Plaintiff's reliance on citing documents attached to his SAC is insufficient to authenticate the evidence his filings rely on. And authentication, Defendants contend, is a condition precedent to admissibility. Defendants also assert that, during discovery, Plaintiff failed to disclose any of the videos cited in the SAC. This failure, according to the Federal Rules of Civil Procedure, prevents Plaintiff from using them on a motion. Further, Plaintiff has not established for the Court which officer is who in his videos. Thus, it makes it nearly impossible for the Court to discern which of the Defendant officer's conduct it must assess for the purposes of Plaintiff's claims. As such, the Court should not consider the exhibits attached to Plaintiff's SAC.

It is true that "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment," and that "[a]uthentication is a condition precedent to admissibility." <u>Orr v. Bank of Am., NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002). "[T]his condition is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." <u>Id.</u> (quoting Fed. R. Evid. 901(a)). Further, "documents authenticated through personal knowledge must be attached to an affidavit that meets the requirements" of Federal Rule of Civil Procedure 56(e), and "the affiant must be a person through whom the exhibits could be admitted into

evidence." Id. at 773-74.

Further, when a nonmoving party is pro se, a court must "consider as evidence all factual statements made in motions and pleadings that were based on his personal knowledge, admissible in evidence, and attested to under penalty of perjury." King v. County of Los Angeles, 885 F.3d 548, 553 (9th Cir. 2018). For instance, a "verified complaint may serve as an affidavit for purposes of summary judgment if [1] it is based on personal knowledge and if [2] it sets forth the requisite facts with specificity." California Pro-Life Council, Inc. v. Randolph, 507 F.3d 1172, 1176 (9th Cir. 2007) abrogated on other grounds by John Doe No. 1 v. Reed, 561 U.S. 186 (2010).

The Court finds that Plaintiff's motion and opposition to Defendants' summary judgment cite to admissible evidence sufficient to support the filings. The Court finds the facts alleged underlying the four incidents at issue in these cross motions are based on Plaintiff's personal knowledge because he was the subject of the enforcement actions underlying each of these incidents. Further, the facts are alleged with the required specificity. Therefore, Plaintiff's SAC can be considered as an affidavit in support of his motion and opposition. See California Pro-Life Council, 507 F.3d at 1176.[1]

Importantly, the SAC cites exhibits identifying body footage camera footage: specifically, along with the exhibit letter, the exhibits identify the name of the Defendant officer who recorded the footage and the relevant date the footage was recorded. The Court has carefully reviewed these exhibits and the pertinent manual filing accompanying the SAC.[2] Specifically, Plaintiff submitted a manual filing on April 17, 2020 including: May 5, 2017 body camera footage from Defendants Owensby and O'Connell, August 12, 2017 body camera footage from Defendant Kopf, and

---

[1] The Court will additionally consider Plaintiff's factual statements as evidence in these cross motions. See King, 885 F.3d at 553.

[2] Because pro se filings are construed liberally, the Court construes the exhibits cited and attached to the FAC, as well as the accompanying manual filing submitted to support it, as if they were filed in support of the SAC. See Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988) ("In civil rights cases where the plaintiff appears pro se, the court must construe the pleading liberally and must afford the plaintiff the benefit of any doubt."). The Court separately finds that these filings are part of the record for the purpose of considering the parties' cross motions for summary judgment. See Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials."); see also King, 885 F.3d at 553.

February 3, 2018 body camera footage from Defendant O'Connell. Similarly, in support of his partial motion for summary judgment, Plaintiff submitted a manual filing containing body camera footage from the June 24, 2017 incident from Defendants O'Connell and McFarland.[3]

The Court finds that Defendants' authentication-based objection to Plaintiff's use of this body camera footage lacks merit. As Plaintiff contends, he has personal knowledge that this video footage is what he asserts it to be in both the SAC and his motion for partial summary judgment. He asserts that Defendant LVMPD provided this footage to him—an assertion that has not been substantively rebutted. In turn, he asserts that the videos are of his encounters with the Defendant officers on May 5, 2017, June 24, 2017, August 12, 2017, and February 3, 2018. The Court has carefully reviewed the footage and finds that Plaintiff has authenticated this footage.[4] Further, Defendants have presented no reasonable basis to doubt the authenticity of this body camera footage.

Separately, the Court rejects Defendants' argument that it should not consider the body camera footage because it was not disclosed to them and because the Court is unlikely to be able to ascertain which Defendant officer recorded which video. First, the Court finds that the body camera footage was created by Defendant LVMPD and its employees, including the Defendants officers. Thus, Defendants had control and access to this body camera footage before it was ever provided to Plaintiff to use in this case. Plaintiff also manually filed some of this video footage in April 2020, when this case was still at the pleading stage. Second, Defendants' concern on the Court's behalf are unfounded. The Court, construing Plaintiff's filings liberally, is able to ascertain which Defendant officer recorded which video.[5]

---

[3] For Defendants' motion for summary judgment, Defendants manually filed body camera footage for the following incidents from the following Defendant officers: Defendant Owensby's footage from May 5, 2017 and Defendant O'Connell's footage from February 3, 2018.

[4] The Court does note that there was some camera footage that was not properly formatted or whose province could not be established. The Court has not relied upon such footage.

[5] Moreover, "a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." Orr, 285 F.3d at 774. Thus, even if Plaintiff's filings, liberally construed, failed to show he had personal knowledge of the videos, the Court finds that the proper foundation could be established as public records under the Federal Rules of Evidence 901(b)(1) (testimony of a witness with knowledge) and 901(b)(7) (public record).

Ultimately, "[o]nce the trial judge determines that there is prima facie evidence of genuineness, the evidence is admitted." Orr, 285 F.3d at 773 n.6. For the reasons discussed above, the Court finds that Plaintiff has properly authenticated the body camera footage for purposes of the cross motions and it is therefore properly admitted. The Court also finds any other objection Defendants raise as to the admissibility of Plaintiff's other evidence lacks merit. To be sure, to the extent the Court has been unable to determine the admissibility of any evidence, the Court has not considered it in making factual findings for the record.

### b.  Undisputed Facts

Based on its review of the evidence on file, the Court finds the following undisputed facts.

####        i.    May 5, 2017 Citation for Obstruction of a Public Sidewalk

Plaintiff is a street performer and operates a costume catering company that rents costumes to other street performers. On Friday, May 5, 2017, Plaintiff, along with at least two other individuals, is street performing in the United Artist Showcase mall between the MGM Grand Hotel and Tropicana Avenue. Plaintiff is dressed as Thor, the Demigod of Thunder, and two others are dressed as Captain America and Lego Batman. They take photographs with tourists and others walking on the Las Vegas Strip, for tips. In doing so, they are standing on the sidewalk.

LVMPD officers approach them. Plaintiff and the other street performers move towards a landscape ledge barrier near the sidewalk. Before Defendant Owensby engages Plaintiff, other officers speak to Plaintiff. As Defendant Owensby approaches, and throughout his interaction with Plaintiff, there is a consistent flow of pedestrian traffic. The officers inform Plaintiff that they witnessed him obstructing the flow of pedestrian traffic while he and the other street performers stood on the sidewalk. Defendant O'Connell tells Plaintiff he is not free to leave. Defendant O'Connell orders Plaintiff to provide his identification to Defendant Owensby. Plaintiff complies. After Plaintiff seeks clarification about the obstructive use of the sidewalk ordinance and its relation to street performers, Defendant O'Connell explains he cannot be standing on the Las Vegas Strip as a street performer.[6] After handing Plaintiff the citation, Defendant Owensby

---

[6] Specifically, Defendant O'Connell tells Plaintiff that he "cannot be out here on the sidewalk obstructing pedestrian traffic. What you're doing, you're obstructing pedestrian traffic when you come out here you stop people for pictures this and that, the crowd gathers." "You don't stop [pedestrians], you walk down the sidewalk, and if

requests, and takes, photographs of Plaintiff without his costume helmet on. After Defendant Owensby takes the photograph, he tells Plaintiff that he is free to go.

At the beginning of their interaction, Plaintiff states he owns a costume rental company. During the interaction, Defendant Owensby learns that Plaintiff is soliciting tips as a street performer, and Defendant Owensby states that any kind of solicitation without a business license is unlawful. For that reason, Defendant Owensby threatens to cite Plaintiff multiple times for conducting business without a license. He ultimately does not.

In the end, Defendant Owensby cites Plaintiff for obstructive use of the sidewalk pursuant to Clark County Code ("CCC") § 16.11.035. The citation states that Plaintiff "did obstruct, block, hinder, or interfere with pedestrian passage on any public sidewalk in the resort, corridor, which resulted in a threat or" "degradation to the safety of the pedestrians." ECF No. 111-3 at 6. The citation orders Plaintiff to appear at the Las Vegas Justice Court address of 200 Lewis Avenue Las Vegas Nevada, Nevada 89155 on May 25, 2017 at 8:00 am. Moreover, the declaration of arrest states, "Prosecution please Subpoena LVMPD Officers" Defendants Owensby and O'Connell. ECF No. 111-3 at 7. Ultimately, Plaintiff is directed to the Las Vegas Community Impact Center, where he goes before a judge and is offered a community court option as an alternative to proceedings through the Justice Court of Clark County. Plaintiff, believing he did not obstruct the sidewalk, foregoes the community court option. After his case is transferred to the Justice Court, the case proceeds to trial. At trial, the State fails to satisfy its burden that Plaintiff obstructed the sidewalk consistent with Clark County Code Chapter 16.11 beyond a reasonable doubt. The case is dismissed.

ii.    <u>June 24, 2017 Detention for Obstruction of a Public Sidewalk</u>

On Saturday, June 24, 2017, Plaintiff, and two to six other street performers are once again in the United Artists Showcase Mall, this time near the Marshalls' escalators. Once again, they are taking pictures with tourists and other individuals walking on the strip. Once more, LVMPD officers, including Defendants O'Connell and McFarland, approach them. At the beginning of the interaction, Plaintiff asserts that he has a right to have his street performer union representative,

---

someone wants a picture . . ., take the picture and keep on moving."

Michael Moore, be present during this interaction. Defendant O'Connell orders Plaintiff to provide his identification or he will put him in handcuffs. Plaintiff is not free to leave. Plaintiff complies and sits down on the landscape ledge barrier near the sidewalk. Plaintiff asks the Defendant officers questions about how the obstruction of a public sidewalk ordinance applies to street performers in that area. While Defendant O'Connell is conducting background checks on them, he stops and orders Defendant McFarland to handcuff Plaintiff.

Defendants O'Connell and McFarland continue their investigation. During this time, the Defendant officers learn from Plaintiff that his understanding of this ordinance stems, in part, from information prepared by Moore, as shown by a card Defendant McFarland obtains through a consensual search of Plaintiff's pockets. After approximately five minutes of being handcuffed, Defendant O'Connell tells Plaintiff they have had prior interactions with Moore and have reason to believe he is "taking their money" without providing them a benefit. In addition to Plaintiff, Defendant O'Connell asks another detained, street performer if he is paying Moore too. The individual nods yes. Defendant O'Connell requests and Plaintiff agrees to provide him with Moore's contact information. Defendant O'Connell also explains to Plaintiff that he was handcuffed because of his record. He further explains that he believes that Plaintiff was initially not cooperating, he did not trust Plaintiff, and he was "too animated." Defendant O'Connell takes a photograph of Plaintiff's identification card and other cards provided by Plaintiff. After approximately nine minutes more of investigating, Defendant O'Connell tells Plaintiff he will uncuff him and set him free, if Plaintiff provides him with Moore's phone number. After agreeing once again to do so and providing the information, Plaintiff is uncuffed and allowed to go free. He is neither cited nor taken into custody for any violation.

iii.    <u>August 12, 2017 Arrest and Citation for Doing Business Without a License</u>

On Saturday, August 12, 2017, Plaintiff is in the United Artists Showcase Mall's parking garage meeting with potential clients, as part of his costume catering company. Plaintiff's costumes for rent are inside his van. While he conducts his business, LVMPD officers surround Plaintiff and his customers. Defendant Kopf then arrests Plaintiff for conducting business without

1    a license. LVMPD officers then search Plaintiff's van and impound the costumes they find in it.

2    Defendant Kopf cites Plaintiff for conducting business without a license in violation of

3    CCC § 6.04.130 and marketing false trademark goods in violation of Nevada Revised Statute

4    ("NRS") § 205.210. According to the citation, Plaintiff "engage[d] in business by renting out

5    costumes without having the appropriate permit or license at 3785 Las Vegas parking" and "did

6    market, rent costumes w/o written authority of person, corporation, association or union at 3785

7    S. Las Vegas Blvd." ECF No. 111-3 at 19. A criminal proceeding is initiated against Plaintiff based

8    on this incident. The State, however, dismisses the complaint.

9                iv.    February 3, 2018 Arrest and Citation for Obstruction of a Public

10                       Sidewalk and for Doing Business Without a License

11    On Saturday, February 3, 2018, Plaintiff, and other street performers, participate in a street

12    performer related protest. When the protest concludes, they are once again located near the United

13    Artists Showcase Mall, near the Marshalls' escalator. Defendant O'Connell arrests Plaintiff who,

14    at the time he is arrested, is holding a protest sign. While another officer escorts one of the street

15    performers to a police car, the street performer explains to the officer that they rented the costume

16    they have on from Plaintiff. Defendant O'Connell confirms that the other street performers also

17    rented costumes from Plaintiff. The officers cite Plaintiff for obstructing a public sidewalk by

18    causing a threat or degradation to the safety of the pedestrians, as well as conducting business

19    without a license. Although Plaintiff is arrested, spends hours in custody, and is released on his

20    own recognizance, the District Attorney's Office does not file criminal charges against him.

21            **c.  Disputed Facts**

22                i.    May 5, 2017

23    The parties dispute whether the sidewalk, where Plaintiff and the other street performers

24    were cited at for taking photos with tourists and others, is busy with pedestrian traffic. They also

25    dispute whether Defendant O'Connell participates at all in Plaintiff's citation being issued. They

26    also dispute whether the Defendant officers played any role in prosecuting Plaintiff in relation to

27    this citation.

28    ///

ii.     June 24, 2017

The parties dispute the Defendant officers' basis for detaining Plaintiff. The parties also dispute whether Defendant O'Connell handcuffs Plaintiff. Additionally, they dispute whether Defendant McFarland is personally involved in Plaintiff's detention.

iii.    August 12, 2017

The parties dispute whether Plaintiff had a license to conduct business. They dispute whether any of the officers destroy property in his van when his van is searched after his arrest. Separately, the parties dispute whether Defendant Riddle is personally involved with arresting or citing Plaintiff on this date.

iv.     February 3, 2018

The parties dispute whether Plaintiff is street performing at the time he is arrested. The parties dispute whether Plaintiff is obstructing the sidewalk he is standing on when he encounters the Defendant officers. The parties dispute whether, on this date, Plaintiff is licensed to conduct his costume catering company business.

## V.     DISCUSSION

The Court now addresses the motion cross motions for summary judgment. Defendants move for summary judgment against all Plaintiff's causes of action, including his Monell claim, which in turn are all brought pursuant to 42 U.S.C. § 1983. Conversely, Plaintiff moves for partial summary judgment as to his first and third causes of action against Defendant O'Connell and against Defendant LVMPD for Monell liability because of Defendant O'Connell's official capacity conduct against Plaintiff.

### a.  Applicable Law

To make out a prima facie case under § 1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right. Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1989). "Liability under [§] 1983 arises only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Additionally, "[a] supervisor is only liable for the constitutional

violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983." Id. (citations omitted).

In addition, a municipal entity may also be sued under § 1983 for "their own illegal acts." Connick v. Thompson, 563 U.S. 51, 60 (2011). "They are not vicariously liable under § 1983 for their employees' actions." Id. Under Monell, when a municipal policy of some nature is the "driving force" behind an unconstitutional action taken by municipal employees, the municipality will be liable. Monell v. Dep't of Social Services of New York, 436 U.S. 658 (1978). Further, under Monell, a plaintiff can recover based on three different theories: a.)"commission," a local government implementing its official policies or established customs, such as inadequate training of governmental officials; b.) "omission," the government's omission to an official policy, such as a failure to train; or c.)"ratification," a policymaker's purposeful approval of an employee's unconstitutional conduct. Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010).

Lastly, § 1983 claims may be subject to a qualified immunity defense. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). It is an immunity from suit rather than a defense to liability, and it "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). "Qualified immunity does not shield municipalities from liability." Dougherty, 654 F.3d at 900.

i.   State and Local Statutes at Issue

1.   *Obstructing a Public Sidewalk*

Pursuant to CCC § 16.11.035,[7] "[i]t is the policy of Clark County that no obstructive use,

---

[7] When the Board of Clark County Commissioners enacted this chapter, they made following findings:

[D]ue to vehicle congestion, long delays and increasing costs, it has become increasingly more attractive for residents and visitors to use the public sidewalks on Las Vegas Boulevard South (the Strip) rather than to drive or to ride. Since, traditionally, the major emphasis along the Strip has been on automobile transportation and not on pedestrians, the existing pedestrian environment is

other than a permitted obstructive use, shall be permitted upon any public sidewalk of the resort district of the Las Vegas Valley if the obstructive use, if allowed to occur, would: (a) Cause the LOS for the sidewalk to decline below LOS C; or (b) Result in a significant threat to or degradation of the safety of pedestrians." "Obstructive use" means, inter alia, "[o]bstructing, delaying, hindering, blocking, hampering or interfering with pedestrian passage, including passage to or from private property." Id. at § 16.11.020(e)(7). "Any person who violates any of the provisions of this chapter is guilty of a misdemeanor and upon conviction shall be punished by imprisonment in the county jail for a term not to exceed six months or by a fine not to exceed one thousand dollars, or by both such fine and imprisonment." Id. at § 16.11.090.

2.   *Operating a Business On Public Right-Of-Way*

Under CCC § 6.04.130,

> [i]t is unlawful for any person to sell, peddle, offer to sell or solicit for sale by offering or displaying any merchandise, goods, items, wares, or services on any improved or unimproved portion of a public right-of-way, including private property upon which a limited easement of public access has been granted, in the unincorporated area of Clark County except that which is otherwise expressly permitted by this code or state statute. This prohibition restricts only sales actually occurring or proposed to occur on the aforementioned public right-of-way, and does not prohibit any person from distributing advertisements or other promotional materials designed to encourage commercial transactions at licensed business locations.

Furthermore, under id. at § 6.56.030(a),

> [i]t is unlawful for any person, in the unincorporated areas of the county to operate or conduct business as a temporary store, professional promoter or peddler, solicitor or canvasser without first having procured a license for the same as hereinafter provided, or

---

inadequate as a transportation system and lacking in many safety features. Moreover, a great number of persons are engaged in uses of the public sidewalks which create undue obstruction, hindrance, blockage, hampering, and interference with pedestrian travel. Large numbers of pedestrians are walking in the streets when the public sidewalks become congested and many pedestrians are crossing against the traffic signal indications. In recognition of the need for improvement of the pedestrian environment and the need for accessible public sidewalks, it is necessary to enact the following regulations.

CCC § 16.11.010.

> conduct business through the use or employment of peddlers, operators, managers, employees, solicitors or canvassers without first having procured a license as hereinafter provided. Exempted from licese required herein are peddlers, operators, managers, employees, solicitors, and canvassers who are employed by a licensed temporary store or professional promoter. That for the purpose of this section, "employed" means that applicable state and federal income and FICA taxes are deducted from the pay and are paid to the Internal Revenue Service by that professional promoter or temporary store.

Further, pursuant to NRS § 205.210(1),

> A person shall not knowingly sell, display or advertise, or have in his or her possession with intent to sell, any goods, wares, merchandise, mixture, preparation or compound having affixed thereto any label, trademark, term, design, device or form of advertisement lawfully filed for record in the Office of the Secretary of State by any person, corporation, association or union, or the exclusive right to the use of which is guaranteed to the person, corporation, association or union under the laws of the United States, if the label, trademark, term, design, device or form of advertisement has been used or affixed thereto without the written authority of the person, corporation, association or union, or having affixed thereto any forged or counterfeit representation, likeness, similitude, copy or imitation thereof.

### ii.   Malicious Prosecution

Generally, "a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). An exception to this rule exists, however, when a plaintiff shows that the "defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004).

In Section 1983 based malicious prosecution cases, courts apply the state law elements of a malicious prosecution claim. See Usher, 773 F.2d at 562. Accordingly, to prevail on a claim for malicious prosecution in Nevada and under state law, the plaintiff must show that: 1) the defendants lacked probable cause to initiate the prosecution; 2) malice; 3) the prior criminal proceedings were terminated in his favor; and 4) he suffered damages. LaMantia v. Redisi, 38 P.3d

- 13 -

877, 879 (Nev. 2002). Probable cause "exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009) (internal quotation marks omitted). Probable cause does not require evidence that is conclusive of guilt, but it does require "a fair probability, given the totality of the evidence," that a suspect has committed a crime. Garcia v. County of Merced, 639 F.3d 1206, 1209 (9th Cir. 2011) (internal quotation marks omitted).

### iii.   Deprivation of Property Without Due Process

"The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." Lavan v. City of Los Angeles, 693 F.3d 1022, 1031 (9th Cir. 2012) (quoting U.S. Const. amend. XIV, § 1). "At the threshold, a claim under § 1983 for an unconstitutional deprivation of property must show (1) a deprivation (2) of property (3) under color of state law." Newman v. Sathyavaglswaran, 287 F.3d 786, 789 (9th Cir. 2002). "If these elements are met, the question becomes whether the state afforded constitutionally adequate process for the deprivation." Id. Of course, the Fourteenth Amendment generally requires individuals to receive notice and an opportunity to be heard prior to the government depriving them of their property. Lavan, 693 F.3d at 1032. That said, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).

### iv.   Unreasonable Search and Seizure

Plaintiff's Third Cause of Action alleges that (1) "Defendant LVMPD's officers lacked probable cause on all occasions," (2) following his May 5, 2017 citation, "Defendant LVMPD's officers [] proceed[ed] to continually unreasonably seize and search Plaintiff's person on June 24, 2017, August 12, 2017 and February 3, 2018," and (3) the officers "proceed[ed] to unreasonably search Plaintiff's van on August 12, 2017 absent a warrant, permission or probable cause, and unreasonably seize all of Plaintiff's costumes located therein." The Court construes the Third

Cause of Action as alleging that Defendants violated three specific rights protected by the Fourth Amendment: freedom from (1) destruction of property, (2) citation without probable cause, and (3) false arrest.

### 1.   *Warrantless Searches and Seizures*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). Circumstances that may indicate a seizure has occurred, "even where the person did not attempt to leave," include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id.

Still, officers do not violate the Fourth Amendment when they conduct a warrantless investigatory stop or encounter, if they have "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). In fact, "so long as [officers] have an articulable basis for suspecting criminal activity," they may effectuate such detentions "on less than probable cause." Michigan v. Summers, 452 U.S. 692, 698-99 (1981). In such circumstances, "the court must consider whether in light of the totality of the circumstances, the officer [indeed] had a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Basher, 629 F.3d 1161, 1165 (9th Cir. 2011).

That said, an investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983). Additionally, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Id. Consequently, to determine whether a seizure is unreasonable, courts consider both "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances

which justified the interference in the first place." Terry, 392 U.S. at 19-20. The government bears the burden of showing that "the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." Royer, 460 U.S. at 500. That seizure becomes a de facto arrest that requires probable cause, if it exceeds the scope of a permissible detention, i.e., it becomes something more than "a brief stop, interrogation, and under the proper circumstances, a brief check for weapons." United States v. Miles, 247 F.3d 1009, 1012 (9th Cir. 2001). "There has been an arrest if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning." Id.

Additionally, the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Thus, warrantless searches are generally unconstitutional unless they fit into one of several exceptions. Riley v. California, 573 U.S. 373, 382 (2014) (citation omitted). Among these exceptions is the "search incident to a lawful arrest" exception. Arizona v. Gant, 556 U.S. 332, 338 (2009). "Because warrantless . . . seizures are per se unreasonable, the government bears the burden of showing that a warrantless . . . seizure falls within an exception to the Fourth Amendment's warrant requirement." Garcia v. City of Los Angeles, 11 F.4th 1113, 1118 (9th Cir. 2021).

Finally, the destruction of property by state officials constitutes a "seizure" under the Fourth Amendment. Fuller v. Vines, 36 F.3d 65, 68 (9th Cir. 1994), overruled on other grounds by Robinson v. Solano County, 278 F.3d 1007, 1013 (9th Cir. 2002). As with any seizure under the Fourth Amendment, "[r]easonableness is the touchstone": thus, courts must "look to the totality of the circumstances to determine whether the destruction of property was reasonably necessary to effectuate the performance of the law enforcement officer's duties." San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 975 (9th Cir. 2005).

### 2.   *Citation Without Probable Cause and False Arrest*

The Court has not found any authority establishing a separate cause of action under the Fourth Amendment for "citation without probable cause" that does not also reflect an analysis under the false arrest inquiry. See, e.g., Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486,

1   1498-1502 (9th Cir. 1996) (analyzing improper issuance of citation theory as claim for false arrest

2   since the issuance of a citation under California law is equivalent to an arrest); Reed v. Lieurance,

3   863 F.3d 1196, 1205 (9th Cir. 2017) (concluding that there was a Fourth Amendment seizure where

4   defendant officer "issued the citation for obstruction and subsequently forced [the plaintiff] to go

5   to a different location under threat of being taken into physical custody," and thus the operative

6   question was whether the officer "had probable cause to believe that [the plaintiff] had committed

7   or was committing obstruction"). As Plaintiff's claims for citation without probable cause and

8   false arrest can be legally understood as raising the same claim—false arrest without probable

9   cause—they are analyzed together under this legal rubric.

10        Accordingly, to establish a false arrest claim, a plaintiff must demonstrate that his arrest

11   was made "without probable cause or other justification." Dubner v. City & County of San

12   Francisco, 266 F.3d 959, 964-65 (9th Cir.2001); see also Caballero v. City of Concord, 956 F.2d

13   204, 206 (9th Cir. 1992). For Fourth Amendment purposes, an "arrest" is equivalent to a seizure

14   of the person and may be effected by the application of physical force on the arrestee accompanied

15   by the lawful authority to do so "or, where that is absent, submission to the assertion of authority."

16   California v. Hodari D., 499 U.S. 621, 624, 626 (1991). Nevada's definition of arrest is similar:

17   "an arrest is defined as 'the taking of a person into custody, in a case and in the manner authorized

18   by law.'" Minor Boy v. State, 537 P.2d 477, 463 (Nev. 1975) (quoting NRS 171.104). "It is

19   sufficient if the person arrested understands that he is in the power of the one arresting, and submits

20   in consequence." Id. As with malicious prosecution claims, the absence of probable cause is

21   required to assert a false arrest claim. See United States v. McCarty, 648 F.3d 820, 838 (9th Cir.

22   2011), as amended (Sept. 9, 2011) (internal quotation marks omitted); see also Devenpeck v.

23   Alford, 543 U.S. 146, 152 (2004).

24                               v.   First Amendment Retaliation

25        "As a general matter the First Amendment prohibits government officials from subjecting

26   an individual to retaliatory actions for engaging in protected speech." Nieves v. Bartlett, 139 S. Ct.

27   1715, 1722 (2019) (citations, brackets, and internal quotation marks omitted). To succeed on a

28   claim for First Amendment Retaliation under § 1983, the plaintiff must show (1) "he engaged in

constitutionally protected activity," (2) "as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity," and (3) "there was a substantial causal relationship between the constitutionally protected activity and the adverse action." Ballentine v. Tucker, 28 F.4th 54, 61 (9th Cir. 2022). To demonstrate the third element, the "plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest]." Id. at 63. But, like malicious prosecution and false arrest claims, a claim for retaliatory arrest generally fails if the arresting officer had probable cause. See Nieves, 139 S. Ct. at 1724-25.

"The sidewalks along the Las Vegas Strip dedicated to public use are public fora." Santopietro v. Howell, 73 F.4th 1016, 1024 (9th Cir. 2023). "[S]treet performing is expressive speech or expressive conduct protected under the First Amendment." Id. at 1021. "[T]he solicitation of tips is entitled to the same constitutional protections as traditional speech." Id. at 1024. "Municipalities accordingly may not ban either 'passive' solicitation of tips for street performance (e.g., putting a hat out or saying 'thank you'), or 'active' solicitation (e.g., encouraging a tip orally or by tipping a hat)." Id.

vi.   Monell Liability

Generally, a "suit against a governmental official in his official capacity is equivalent to a suit against the governmental entity itself." Larez v. Los Angeles, 946 F.2d 630, 645 (9th Cir. 1991). Therefore, the official capacity claims against the individually named Defendants under § 1983 will be analyzed together with Plaintiff's claims against Defendant LVMPD as a Monell claim. To prevail against the municipal entity, the plaintiff must show "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).

///

///

**b.  Defendants' Motion for Summary Judgment**

i. <u>Deprivation of Property Without Due Process (Second Cause of Action)</u>

To begin, the Court addresses Plaintiff's Second Cause of Action, which concerns the alleged deprivation of property without due process, during the August 12, 2017 and February 3, 2018 incidents. Plaintiff contends that Defendants' illegal search of Plaintiff's van on August 12, 2017 resulted in the destruction of certain costumes and storage containers seized from the van. Moreover, he received an inaccurate inventory of his seized property. Plaintiff similarly asserts that Defendants also "deteriorated" certain costumes seized as a result of the February 3, 2018 incident. He contends that in both incidents he was entitled to notice and a hearing before his interest in his personal property was permanently removed.

Defendants argue that Plaintiff's cause of action fails because his Third Cause of Action for unreasonable search and seizure, as discussed below, already provides him with an adequate constitutional amendment which addresses the alleged violation. Plaintiff did not respond to this argument. The Court agrees with Defendants, finding that the Fourth Amendment provides Plaintiff with the appropriate basis for his constitutional protection regarding the seizure of his property. <u>See</u> <u>Albright</u>, 510 U.S. at 273; <u>San Jose Charter</u>, 402 F.3d at 975.

Therefore, summary judgment is granted in Defendants' favor on this cause of action for the August 12, 2017 and February 3, 2018 incidents.

ii. <u>May 5, 2017</u>

Defendants move for summary judgment against all the remaining causes of action underlying the May 5, 2017 incident, including for malicious prosecution, unreasonable search and seizure, and First Amendment retaliation. The Court finds that the only Defendant officers these cause of actions are asserted against are Defendants Owensby and O'Connell.

1. *Malicious Prosecution (First Cause of Action)*

Defendants argue summary judgment is warranted in their favor on this cause of action. First, Plaintiff fails to show that either Defendants Owensby or O'Connell personally participated in any malicious prosecution. He admitted that he does not know who made the decision to initiate

the prosecution against him. Second, the citation did not initiate criminal proceedings in the Justice Court of Clark County. Rather, the ticket referred Plaintiff's case to appear before the Community Impact Center, and the Community Impact Center does not entertain criminal proceedings. Third, the officers had probable cause to cite Plaintiff for obstructing the sidewalk. Finally, Plaintiff has failed to provide any evidence that Defendants Owensby or O'Connell acted with malice. Plaintiff contends that the Defendant officers acted with malice when they baselessly seized, cited, and prosecuted him for engaging in constitutionally protected First Amendment activity, such as soliciting tips as a street performer.

The Court denies Defendants' motion for summary judgment on this claim. "A malicious prosecution claim requires that the defendant initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding against the plaintiff." LaMantia v. Redisi, 38 P.3d 877, 879-80 (Nev. 2002). Here, the Court finds the citation and declaration of arrest show that Defendants Owensby and O'Connell initiated or procured the institution of criminal proceedings against Plaintiff. Further, Defendants rely on the Restatement (Second) of Torts § 654 (1977)'s definition of what constitutes a criminal proceeding to argue that Plaintiff's citation did not lead to automatic criminal prosecution because it was referred to community court. Defendants, however, fail to provide any Nevada law adopting the Restatement's definition of what does not constitute a criminal proceeding. Additionally, the mere fact that he might have been offered a form of diversion from the criminal proceeding does not render the entire proceeding civil or make it less of criminal proceeding. Moreover, assuming the facts in Plaintiff's favor, even if he were to have participated in the community court option, he would have still been found guilty of violating the obstruction of public sidewalk ordinance. Lacey v. Maricopa County, 693 F.3d 896, 919-20 (9th Cir. 2012) (explaining that "[a]lthough being lawfully arrested on a criminal charge may be considered the institution of a criminal proceeding, where the arrest is not a valid one, an action for malicious prosecution will not lie unless some further step is taken, such as bringing the accused before a magistrate for determination whether he is to be held. If there is nothing more than the false arrest and the accused is released without any further proceeding, the remedy is limited to damages for the false arrest."). The facts show that Plaintiff chose to forego the

community court option because he believed he was not allowed to plead, nor would his participation allow him to be found, not guilty of obstructing a public sidewalk on May 5, 2017. Finally, Defendants' counsel conceded that issues of fact existed as to whether the Defendant officers had probable cause to cite Plaintiff for obstructing the sidewalk.

Therefore, the Court denies Defendants Owensby and O'Connell summary judgment in their favor on this claim for this incident.

### 2.   *Unreasonable Search and Seizure (Third Cause of Action)*

Defendants argue that summary judgment should be granted in their favor against this cause of action because citations, like the one issued to Plaintiff on this date, do not constitute a seizure under the Fourth Amendment. And, even if a citation constituted a seizure, probable cause existed to issue the citation in the first place.

Plaintiff responds that the undisputed facts show that Defendants Owensby's and O'Connell's conduct made it clear that he was detained and not free to leave. Further, Defendants have failed to show that they had reasonable suspicion or probable cause to detain him. This is because according to the ordinance, the facts stipulated, and the body camera footage, there was no actual obstruction of the sidewalk. Plaintiff argues that state court's finding of no probable cause or reasonable suspicion, pursuant to the doctrine of issue preclusion, bars Defendants from asserting that they had any reasonable suspicion to suspect, or probable cause to cite, Plaintiff for violating CCC § 16.11.035. Defendants disagree, arguing the issues litigated in the criminal proceeding are not identical to the ones at issue in this case, and neither Defendants LVMPD, Owensby, or O'Connell had a full and fair opportunity to litigate the issues now before this Court.

As an initial matter, the Court addresses Plaintiff's contention that issue preclusion bars Defendants from arguing they had reasonable suspicion to detain or probable cause to cite Plaintiff. The Court finds that issue preclusion does not bar Defendants from arguing reasonable suspicion or probable cause existed. "A federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. Of Educ., 465 U.S. 75, 81 (1984). Under Nevada law, issue preclusion applies if (1) the issue decided in the prior litigation is identical to the issue

1    presented in the current action; (2) the initial ruling was on the merits and has become final; (3)

2    the party against whom the judgment was asserted is the party or is in privity with a party to the

3    prior litigation; and (4) the issue was actually and necessarily litigated. Five Star Capital Corp. v.

4    Ruby, 194 P.3d 709, 713 (Nev. 2008).

5           The Court does not find that the Justice Court of Clark County's finding meets all the

6    elements of issue preclusion, in that the issue necessarily decided at the criminal trial was not

7    identical to the one being litigated in the instant case. The reasonable doubt standard applied in the

8    criminal trial is substantively different from the reasonable suspicion or probable cause standard

9    at issue now. Compare NRS 175.191 (describing reasonable doubt standard); Harrison v. State,

10   608 P.2d 1107, 1109 (Nev. 1980) ("the state had the burden of proving each element of the offense

11   beyond a reasonable doubt") with Sokolow, 490 U.S. at 7; McCarty, 648 F.3d at 838. Plaintiff fails

12   to demonstrate that the issues of reasonable suspicion or probable cause separate from the

13   determination of guilt were actually litigated by the parties at the criminal trial. Therefore, the

14   Court rejects Plaintiff's issue preclusion argument.

15          Next, the Court finds that based on the undisputed facts, and disputed facts assumed in

16   Plaintiff's favor, the Defendant officers had reasonable suspicion to detain Plaintiff. Clark County

17   prohibits obstructive use of any public sidewalk if the obstructive use would result in a significant

18   threat to or degradation of the safety of pedestrians. CCC § 16.11.035. Plaintiff and at least two

19   other street performers were performing in the United Artist Showcase mall between the MGM

20   Grand and Tropicana Avenue. They were taking photographs with tourists and others walking on

21   the sidewalk. When LVMPD officers approached them, they moved towards a landscape, ledge

22   barrier near the sidewalk. As Defendant Owensby approached Plaintiff, and throughout their

23   interaction, there was a consistent flow of pedestrian traffic. The Defendant officers, including

24   Defendant O'Connell, informed Plaintiff that they witnessed him obstructing the flow of

25   pedestrian traffic while he and the other street performers stood on the sidewalk. The Court finds

26   that, under the totality of the circumstances, the Defendant officers had reasonable suspicion to

27   detain Plaintiff for obstructing a public sidewalk. See Summers, 452 U.S. at 698-99; Basher, 629

28   F.3d at 1165. Plaintiff's Fourth Amendment claim must fail insofar as it is based on the theory that

he was seized without reasonable suspicion.

Taking the facts in the light most favorable to Plaintiff, however, a jury could find that Plaintiff was issued a citation without probable cause in violation of the Fourth Amendment. First, as conceded by Defendants' counsel, issues of fact exist as to whether the Defendants officers had probable cause to cite Plaintiff for obstructing a public sidewalk. The Court assumes for this analysis they did not. Second, it is true that the issuance of a citation in and of itself may not constitute a seizure under the Fourth Amendment. See, e.g., Stilwell v. Clark County, No. 2:11-CV-01549-RFB-VCF, 2016 WL 4033959, at *5 (D. Nev. July 26, 2016) (no seizure during stop and citation because the plaintiff failed to allege "they were seized through the application of physical force or that they were otherwise taken into custody"). Something more is needed. For example, in Reed, the Ninth Circuit considered whether the defendant officers had probable cause to arrest and cite the plaintiff for obstructing a peace officer, a misdemeanor pursuant to Montana law. 863 F.3d at 1202. The court found first that issues of fact existed as to whether there was probable cause to believe that the plaintiff presented any risk of obstructing, or that they had reason to believe he was obstructing. Id. at 1205-06. Importantly though, it found that it was undisputed that "there was a Fourth Amendment seizure when [the defendant officer] issued the citation for obstruction and subsequently forced [plaintiff] to go to a different location under threat of being taken into physical custody." Id. at 1205 n.3. The Court finds whether that type of seizure existed here to be central to the dispute at hand.

Here, the undisputed facts show that, even though the Defendant officers did not apply physical force to arrest Plaintiff, Plaintiff still submitted to the Defendant officers' authority as part of being issued a citation, constituting a Fourth Amendment seizure. See Hodari D., 499 U.S. at 624, 626. The undisputed facts show that Defendant O'Connell told Plaintiff he was not free to leave. Defendant O'Connell ordered Plaintiff to provide his identification to Defendant Owensby to which Plaintiff complied. After inputting Plaintiff's information, Defendant Owensby handed Plaintiff the citation. Before he was told that he was free to leave, however, Defendant Owensby required Plaintiff take a photograph, including complying with an order that Plaintiff take his costume helmet off. Further, it is only after the photograph is taken that Defendant Owensby states

1   that Plaintiff is free to go. The Court finds the undisputed facts show that Plaintiff was seized. See

2   Reed, 863 F.3d at 1205 n.3.[8]

3        The Court separately finds Defendants' reliance on Karam v. City of Burbank, 352 F.3d

4   1188, 1192 (9th Cir. 2003), misplaced. Defendants argue that this case supports the conclusion

5   that a citation, as a matter of law, does not constitute a seizure. The Court, however, finds Karam

6   distinguishable. First, unlike Plaintiff here, the plaintiff in Karam did not submit to the defendant

7   officer's authority after being told to leave the city council chambers; she stayed and addressed the

8   council. Id. at 1191. Moreover, the defendant officer never arrested the plaintiff let alone detained

9   her. Id. Further, it was not until a few days after the incident that the plaintiff in Karam was even

10  issued the citation. Id. Finally, and most importantly, the seizure in Karam concerned the

11  conditions of a plaintiff's own recognizance release, including whether court appearances and

12  obtaining permission to leave the state amounted to a Fourth Amendment seizure, not whether the

13  officer submitted to the defendant officer's authority like in Reed. Id. at 1192. The Ninth Circuit

14  ultimately determined that being subject to these conditions was de minimus. Id. at 1194. The

15  undisputed facts in this case show that Plaintiff's seizure was not. Lastly, the Court rejects

16  Defendants' reliance on out of circuit case law and district court cases. Those cases are not binding

17  on, or persuasive to, this Court's analysis.

18       Finally, Defendants argue that Defendant O'Connell is separately entitled to summary

19  judgment because he did not interact with or issue Plaintiff any citation on this day. "[P]ersonal

20  participation is not the only predicate for section 1983 liability." Johnson v. Duffy, 588 F.2d 740,

21  743 (9th Cir. 1978). Indeed, "[a]nyone who causes any citizen to be subjected to a constitutional

22  deprivation is . . . liable . . . by setting in motion a series of acts by others which the actor knows

23  or reasonably should know would cause others to inflict the constitutional injury." Id. at 743–44.

24  Here, it is undisputed that Defendant O'Connell told Plaintiff he was not free to leave after he and

---

26  [8] To be sure, this photograph was requested after Plaintiff had already provided Defendant Owensby his
27  identification card to investigate and cite Plaintiff. Thus, the Court cannot find, nor do Defendants provide, any
    reasonable basis for why Defendant Owensby required a photograph of Plaintiff. Cf. United States v. Roberts, 928 F.
    Supp. 910, 939 (W.D. Mo. 1996) ("Incarcerating someone for the sole purpose of coercing her into giving a
28  photograph for use in a photo lineup is a violation of her right to be free from unreasonable seizure of her person. . . .
    . [D]efendant's 'consent' to being photographed was coerced and that the coercion resulted in a photograph which,
    placed in a lineup with other photographs, was obviously unduly suggestive.").

Defendant Owensby stopped the street performers. Defendant O'Connell also ordered that Plaintiff provide Defendant Owensby identification. Moreover, when Plaintiff questioned how he violated the obstruction of a public sidewalk ordinance, Defendant O'Connell told Plaintiff his seizure was justified because he could not stand on the Strip's sidewalk as a street performer anymore.[9] Defendant O'Connell's acts supported Defendant Owensby's conduct issuing a citation to Plaintiff for violating the public sidewalk ordinance, the conduct at the center of Plaintiff's Fourth Amendment claim. Lastly, the declaration of arrest arising from Plaintiff's arrest provides Defendant O'Connell's name as someone the prosecution could subpoena. Thus, assuming the facts in Plaintiff's favor, it does not matter whether Defendant O'Connell issued the citation, he knew or should have known that his conduct would cause Plaintiff to be cited without probable cause.

Therefore, the Court finds, assuming the facts in Plaintiff's favor, that Defendant's Owensby and O'Connell violated Plaintiff's Fourth Amendment rights against unreasonable searches and seizures by citing him without probable cause on May 5, 2017.

3. *First Amendment Retaliation (Fourth Cause of Action)*

Defendants assert that Plaintiff's First Amendment Retaliation claim fails because Defendants Owensby and O'Connell had probable cause to stop and cite Plaintiff on May 5, 2017. Moreover, Plaintiff fails to present any evidence that his street performance motivated Defendants Owensby and O'Connell's conduct. And Plaintiff's reliance on statements heard on Defendant Owensby's body camera footage stating Plaintiff did not have a right as a street performer to stand on the Strip because he was obstructing the sidewalk were not made by Defendant Owensby. Rather, Defendant Owensby clarified that he could stop and take pictures so long as he was not hindering the flow of traffic.

The Court finds that Defendants Owensby and O'Connell are not entitled to summary judgment in their favor against Plaintiff's First Amendment Retaliation claim for the May 5, 2017 incident. First, Defendants' counsel conceded at the motion hearing that genuine issues of fact existed as to whether there was probable cause to believe a significant threat or degradation existed

---

[9] As he told the other detained street performers, there was "zero tolerance" for it.

to pedestrian safety, based on Plaintiff's May 5, 2017 street performing conduct. Therefore, at this stage, Plaintiff's claim overcomes the First Amendment Retaliation claim probable cause hurdle. See Nieves, 139 S. Ct. at 1724-25.

Next, the Court addressees Defendants' argument that Plaintiff has not provided evidence to create genuine issues of fact as to the third element of a First Amendment Retaliation Claim. The Court finds he has. Indeed, Plaintiff must show a substantial causal relationship between the protected activity and the adverse action. Retaliatory motive may be established "using direct or circumstantial evidence." Arizona Students' Ass'n v. Arizona Bd. of Regents, 824 F.3d 858, 870 (9th Cir. 2016). Further, "a plaintiff may rely on evidence of temporal proximity between the protected activity and alleged retaliatory conduct to demonstrate that the defendant's purported reasons for its conduct are pretextual or false." Id. Here, evidence of retaliatory motives in the record goes beyond the officer overheard on Defendant Owensby's body camera footage. In fact, as part of seizing and citing them, Defendant Owensby took photographs of Plaintiff. Assuming facts in Plaintiff's favor, they only did this because he was a street performer. Defendant O'Connell also told Plaintiff he cannot be standing on the Strip's sidewalks street performing anymore. Before and after he tells Plaintiff this, he repeatedly tells the other street performers that there was "zero tolerance" for them standing on the Strip. Defendant Owensby also repeatedly threatens to cite Plaintiff for conducting a business without license after he learns that Plaintiff is soliciting tips while street performing. Thus, the Defendant officers made clear that any street performer that was not moving with the crowd or licensed to solicit tips would be subject to adverse action, i.e., being stopped, arrested, and cited. Indeed, the record does not show that any street performers thereafter attempted to walk with the pedestrian traffic to street perform. A jury could find that there is a substantial causal relationship between the protected activity and the adverse action.

Of course, the officers argue that they stopped and detained the street performers because they were obstructing the public sidewalk in violation of a county ordinance. But, if Plaintiff shows that Defendants Owensby and O'Connell "lacked probable cause, that showing bridges the causal gap by reinforc[ing] the retaliation evidence and show[ing] that retaliation was the but-for basis" of their official's actions. Capp v. County of San Diego, 940 F.3d 1046, 1056 (9th Cir. 2019).

Here, as stated above, there are questions of disputed fact as to what basis Plaintiff was cited for: obstructing a public sidewalk or for street performing. Assuming the facts in the light most favorable to Plaintiff, as the Court must do for the analysis at hand, it was the latter. A jury could therefore find that Plaintiff's conduct street performing was the but-for cause of Defendants Owensby and O'Connell's conduct on May 5, 2017.[10]

Lastly, the Court addresses Defendants' contention that the officers, including Defendant Owensby, did not prohibit Plaintiff from street performing because they maintained he could still stop and take pictures with tourists and other observers so long as he was not hindering the flow of traffic. The Court finds this to be a distinction without a difference. Chapter 16 defines a street performer as a "member of the general public who engages in any performing act or the playing of any musical instrument, singing or vocalizing, with or without musical accompaniment, and whose performance is not an official part of a sponsored event." CCC § 16.11.020(i); see also Santopietro, 73 F.4th at 1021 (a street performer is "a member of the general public who engages in any performing art or the playing of any musical instrument, singing or vocalizing, with or without musical accompaniment, and whose performance is not an official part of a sponsored event"). While it may not be an outright prohibition, the condition that Plaintiff and other street performers walk with the crowd to perform would undoubtedly restrict a street performer's ability to perform. And such restrictions do not escape First Amendment scrutiny. A jury could find the Defendant officers' conditions conflict with and in effect prohibit a street performer's ability to perform on the Strip. Separately, it is factually disputed whether Plaintiff was even hindering pedestrian traffic to justify imposing this type of condition. Ultimately, assuming the facts in the light most favorable to Plaintiff, there was no hinderance, therefore there was no need to subject his street performing to such a condition.

Therefore, the Court finds, assuming the facts in Plaintiff's favor, that Defendant's Owensby and O'Connell violated Plaintiff's First Amendment rights by retaliating against him for

---

[10] There is no dispute that Defendant Owensby repeatedly threatened to cite Plaintiff for conducting business without a license, including after he learned that Plaintiff was soliciting tips as a street performer. But see Santopietro, 73 F.4th at 1024; see also Mulligan v. Nichols, 835 F.3d 983, 990 (9th Cir. 2016) (First Amendment rights may be violated where "retaliation is in the form of speech" and is a "threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow").

1   street performing on May 5, 2017.

2   iii.   June 24, 2017

3   Defendants move for summary judgment against all the remaining causes of action
4   underlying the June 24, 2017 incident, including for unreasonable search and seizure and First
5   Amendment retaliation.[11] The Court finds the only Defendant officers these cause of actions are
6   asserted against are Defendants O'Connell and McFarland.

7   1.   *Unreasonable Search and Seizure (Third Cause of Action)*

8   Defendants contend that Defendant O'Connell had reasonable suspicion to conduct an
9   investigative detention of Plaintiff on June 24, 2017. This is because Plaintiff and two to five other
10  street performers were found in the same general area of the United Artists Showcase Mall near
11  the same area from the May 5, 2017 incident. Like the last incident, Plaintiff and the other street
12  performers were taking pictures with tourists and other individuals walking the strip just south of
13  the Marshalls' escalators. Moreover, there was a lot of pedestrian foot traffic where the street
14  performers were located, as it was a Saturday during the summer. In fact, there was more traffic
15  on this day than during the May 5, 2017 incident.[12] Plaintiff also fails to show that Defendant
16  O'Connell handcuffed Plaintiff or that Defendant McFarland was even involved in the detention.

17  Plaintiff disagrees, disputing that the officers had reasonable suspicion to believe he was
18  violating Clark County Code Chapter 16. First, Plaintiff argues that Defendants' basis for stopping
19  him was pretextual: Defendants O'Connell and McFarland detained Plaintiff, not because he was
20  street performing, but for him to provide his union representative's contact information. Second,
21  Plaintiff contends that Defendants reliance on the fact that he was standing in the general area of
22  an escalator does not by itself constitute obstruction of pedestrian traffic—Defendants need to

---

24  [11] Although Defendants contend they are entitled to summary judgment on any malicious prosecution claim
25  against them in relation to this incident, the Court does not find that Plaintiff's SAC alleges such a claim for this date.
    Therefore, it does not address arguments related to malicious prosecution for this incident.

26  [12] Defendants cite and rely on a 2015 updated study titled "Clark County Pedestrian Study, Las Vegas
27  Boulevard: Russell Road to Sahara Avenue" presented to the Clark County Seizure of Public Works. The study
    highlights the importance of ensuring that the spaces near the escalators are clear of all obstructions and recommends
28  that the escalators be deemed a no obstructive use zone. The Court, however, does not find that it is appropriate to
    consider this study in this analysis. It is not clear to what extent, if any, the Defendant officers relied on this study to
    formulate their legal basis for detaining Plaintiff.

show he was standing at an escalator "buffer zone." Third, Plaintiff appears to argue that the Defendant officers exceeded the scope of any permissible detention, including by handcuffing him to obtain his union representative's contact information.

To warrant summary judgment in their favor, Defendants must show no genuine issues of fact exist that they had a reasonable basis for detaining Plaintiff for suspicion of violating CCC § 16.11.035(b). Put differently, that the Defendant officers had an articulable basis that Plaintiff may be "[o]bstructing, delaying, hindering, blocking, hampering or interfering with pedestrian passage" on a public sidewalk resulting "in a significant threat to or degradation of the safety of pedestrians." Id. at § 16.11.020(e)(7); Id. § 16.11.035(b); see Summers, 452 U.S. at 698-99.[13] In turn, for Plaintiff's pretextual argument to warrant denial of summary judgment against him, he must show issues of fact exist as to the facts known to the Defendant officers at the time of the stop. United States v. Magallon-Lopez, 817 F.3d 671, 675 (9th Cir. 2016) (discussing standard for reasonable basis and concluding that, "although [the] focus is on the objectively reasonable basis for the stop, not the officers' subjective intentions or beliefs, the facts justifying the stop must be known to officers at the time of the stop").

The Court finds that the undisputed facts and disputed facts, assumed in Plaintiff's favor, demonstrate that Defendant officers had a reasonable basis for stopping Plaintiff for violating CCC § 16.11.035(b) on June 24, 2017. On that day, Plaintiff and others were street performing at the United Artists Showcase Mall—around the same area he was previously issued citation for public obstruction of a public sidewalk. Once again, they were taking pictures with tourists and other individuals walking in that area. Once more, LVMPD officers, including Defendant McFarland and Defendant O'Connell, who was also involved in the May 5, 2017 incident, approach them. The Court finds that they indeed had an articulable basis for suspecting Plaintiff may be interfering with the pedestrian passage. Therefore, Plaintiff's pretext-based argument fails. The inquiry does not end here however.

---

[13] The Court rejects Plaintiff's argument that Defendants need to show the officers encountered him in an escalator "buffer zone" to justify their suspicion as opposed to an area that could be reasonably believed to be a pedestrian passage on a public sidewalk. The Court cannot find such requirement in the ordinance nor does Plaintiff to cite one.

Defendants also must demonstrate that these officers did not exceed the scope or duration of their permissible detention. Certainly, during a <u>Terry</u> stop motivated by reasonable suspicion, the officer may ask investigatory questions, but the "scope of the detention must be carefully tailored to its underlying justification." <u>Royer</u>, 460 U.S. at 500. The detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." <u>Id.</u> First, the Court finds that the Defendant officers asked Plaintiff questions regarding Moore that did not cause the detention to exceed its justified scope. Indeed, several minutes of additional questions during a stop are permissible so long as they are "(1) part of the stop's mission or (2) supported by independent reasonable suspicion." <u>United States v. Landeros</u>, 913 F.3d 862, 867-68 (9th Cir. 2019).

Here, it is undisputed that, at the beginning of the detention, Plaintiff asserted that he was entitled to have his union representative, Moore, be present during this detention. Further, throughout the detention, Plaintiff questioned how CCC § 16.11.035 applied to street performers. Indeed, Plaintiff's understanding of this ordinance stemmed, in part, from information prepared by Moore, as shown by a card Plaintiff presented to the officers. The officers also told Plaintiff that they had prior interactions with Moore and believed he was taking union members' money without providing any benefit. During the detention, Defendant O'Connell also asked another detained street performer if he was paying Moore too. Accordingly, the Court finds that these additional questions were part of this detention's mission: enforcing the public sidewalk ordinance.

However the Court does not find that the use of handcuffs throughout the detention constituted "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." <u>Royer</u>, 460 U.S. at 500. Based on the undisputed facts, the Court finds that the especially intrusive means of handcuffing was not permissible under the circumstances and therefore the detention transformed into a de facto arrest requiring probable cause.

Although handcuffing an individual to detain them "does not automatically escalate a stop into an arrest, it "substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical Terry stop." <u>Reynaga Hernandez v skinner</u>, 969 F.3d 930, 941

(9th Cir. 2020). The use of the especially intrusive means of handcuffing has been held permissible "where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight, where the police have information that the suspect is currently armed, where the stop closely follows a violent crime, and where the police have information that a crime [involving] violence is about to occur." Id. at 940.

At the time Defendant McFarland handcuffed Plaintiff, there was no evidence suggesting Plaintiff was armed, dangerous, or a flight risk. When the officers first approached Plaintiff, he was taking pictures with tourists and other individuals walking the strip. Defendant O'Connell ordered Plaintiff to provide his identification or he would put him in handcuffs. Plaintiff complied and sat down on the landscape ledge barrier near the sidewalk. While Plaintiff was seated, he asked the Defendant officers questions about how the obstruction of a public sidewalk ordinance applies to street performers. At this point, Defendant O'Connell directed Defendant McFarland to handcuff Plaintiff. A reasonable person in Plaintiff's position would not have felt free to leave after being handcuffed while seated and in the presence of two law enforcement officers.

Defendant O'Connell explained to Plaintiff that he was handcuffed because of his record, he was initially not cooperating, he did not trust Plaintiff, and he was "too animated." But this explanation is belied by the fact that Plaintiff cooperated and sat down on the ledge next to the sidewalk shortly after being asked for his identification and had been sitting for five minutes prior to being handcuffed. Moreover, Plaintiff continued to cooperate while in handcuffs. He agreed to provide O'Connell with Moore's contact information after being asked for it the first time. Inexplicably, O'Connell told Plaintiff nine minutes later that he would uncuff him if he gave O'Connell Moore's number, which Plaintiff had already agreed to provide. Further, Plaintiff's questions regarding the officers' basis for investigating him and the other street performers did not justify detaining him in handcuffs. See Meredith v. Erath, 342 F.3d 1057, 1063 (9th Cir. 2003) (finding officers violated the Fourth Amendment by handcuffing resident who asked "loudly and several times" to see a search warrant).

Having found that Plaintiff was arrested, the Court now turns to assess whether there was probable cause. Taking the facts in the light most favorable to the Plaintiff, the Court concludes

that a jury could find that Plaintiff was arrested without probable cause in violation of the Fourth Amendment. Similar to the May 5, 2017 event, Defendants' counsel conceded at the motion hearing that issues of fact exist as to whether the Defendant officers had probable cause to believe a significant threat or degradation existed to pedestrian safety, based on Plaintiff's June 24, 2017 street performing conduct. Thus, for the same reasons discussed above in relation to the May 5, 2017 event, the Court also finds that the Defendant officers lacked probable causes to effectuate a de facto arrest of Plaintiff on June 24, 2017.

Accordingly, assuming facts in Plaintiff's favor, the Court finds that Defendants' violated Plaintiff's Fourth Amendment rights by handcuffing him, which transformed the investigative stop into a de facto arrest that lacked probable cause on June 24, 2017.

### 2. *First Amendment Retaliation (Fourth Cause of Action)*

Defendants assert that Plaintiff's First Amendment Retaliation claim fails because he has not presented any evidence that his street performance was the basis of the detention. The Court finds that Plaintiff has failed to address Defendants' opposition to this claim. The Court nevertheless addresses whether the evidence in the record supports Plaintiff's First Amendment Retaliation claim for the June 24, 2017 incident.

The Court addresses Defendants' argument that Plaintiff has not provided evidence to create genuine issues of fact as to the third element of a First Amendment Retaliation Claim. Motive may be established "using direct or circumstantial evidence." Arizona Students' Ass'n, 824 F.3d at 870. Further, "a plaintiff may rely on evidence of temporal proximity between the protected activity and alleged retaliatory conduct to demonstrate that the defendant's purported reasons for its conduct are pretextual or false." Id.

The Court finds that Plaintiff has demonstrated that genuine issues of fact exist for a jury to resolve over whether there was a substantial causal relationship between his protected activity and the Defendants' adverse action. Plaintiff's temporary detention, which included being handcuffed, as discussed above, constitutes an adverse action "that would chill a person of ordinary firmness from continuing to engage" in street performing. See Ford, 706 F.3d at 1193 ("This Court has recognized that a retaliatory police action such as an arrest or search and seizure would chill a

person of ordinary firmness from engaging in future First Amendment activity."). Next, the Court incorporates by reference its analysis of Plaintiff's Third Cause of Action for unreasonable search and seizure stemming from this incident. It finds that, rather than a retaliatory basis, Defendants had a reasonable basis for detaining and investigating Plaintiff over whether he was "[o]bstructing, delaying, hindering, blocking, hampering or interfering with pedestrian passage" on a public sidewalk resulting "in a significant threat to or degradation of the safety of pedestrians." CCC § 16.11.020(e)(7); Id. § 16.11.035(b). There is no genuine issue that Defendants had a reasonable basis to suspect that Plaintiff was violating CCC § 16.11.035. This, however, does not end the Court's First Amendment Retaliation claim inquiry.

Here, Plaintiff was suspected of committing the same CCC § 16.11.035 violation for the June 24, 2017 incident, as that which Defendant Owensby actually cited Plaintiff for violating during the May 5, 2017 incident. And it is undisputed that during the June 24, 2017 incident, Defendant O'Connell conducted a background check on him, and questioned Plaintiff, including about his street performer union membership. Just the month before, Defendant O'Connell was also involved in the May 5, 2017 incident. There too, he engaged in a back and forth with Plaintiff about the law regarding obstructing the public sidewalk and asked Plaintiff questions regarding his union membership. Defendant Owensby also took a photograph of Plaintiff, and Defendant O'Connell notified the street performers that there was "zero tolerance" for them standing on the Strip. Assuming the facts in the light most favorable to Plaintiff, the Court finds that this circumstantial and temporal evidence create a genuine issue of fact as to whether Plaintiff's street performing conduct was the but-for cause of Defendant O'Connell's conduct on June 24, 2017. Cf. While v. County of San Bernardino, 503 F. App'x 551, 553 (concluding that, on balance, no reasonable jury could conclude the officers' decision to conduct the pat-down was caused by retaliatory motive as opposed to the multiple pieces of evidence that supported reasonable suspicion).

Therefore, the Court finds, assuming the facts in Plaintiff's favor, that Defendants O'Connell and McFarland violated Plaintiff's First Amendment rights by retaliating against him for street performing on June 24, 2017.

1

2                                            iv.  August 12, 2017

3            Defendants move for summary judgment against all the remaining causes of action

4    underlying the August 12, 2017 incident, including malicious prosecution, unreasonable search

5    and seizure, and First Amendment retaliation. The Court finds that Plaintiff asserts these causes of

6    actions for this incident against Defendants Kopf and Riddle.

7                                1.  *Malicious Prosecution (First Cause of Action)*

8            Defendants contend that Plaintiff's malicious prosecution cause of action fails because he

9    is unable to identify which Defendant officer was responsible for initiating the criminal

10   prosecution against him following his arrest for doing business without a license. Defendants assert

11   that when approached by Defendant Kopf, Plaintiff failed to provide evidence of a license

12   permitting him to conduct business within Clark County. Plaintiff appears to concede that, at that

13   time of this incident, he did not have a business license for the particular area he was renting out

14   costumes when he was arrested.

15           The Court agrees that Plaintiff has failed to provide evidence creating a genuine issue of

16   fact to support denying summary judgment on his claim that he was maliciously prosecuted for

17   renting costumes out of his van in the United Artists Showcase Mall's parking garage. The

18   undisputed evidence shows that Defendants Kopf and Riddle were involved in citing and arresting

19   Plaintiff that day. Defendant Kopf issued the citation that led to his arrest. Plaintiff's verified SAC

20   asserts that he showed Defendant Kopf his business license on his phone. Yet, Plaintiff's response

21   in opposition to Defendants' summary judgment concedes that he was not properly licensed to

22   conduct his business when he was arrested. The Court construes this response as effectively

23   conceding that there is no evidence in the record creating a genuine issue of fact that Plaintiff failed

24   to provide the arresting officers with a valid business license for renting costumes that day. See

25   Ramirez 560 F.3d at 1023; Garcia, 639 F.3d at 1209. Thus, even viewing the evidence in the light

26   most favorable to and making all reasonable inferences in Plaintiff's favor, the Court finds that

27   Plaintiff has failed to satisfy his burden of showing that the Defendant officers lacked probable

28   cause to arrest and cite him. See LaMantia, 38 P.3d at 879; Brown v. Selfridge, 224 U.S. 189, 192

     (1912) (explaining plaintiff bears the burden of proving malice and lack of probable cause).

1    Thus, summary judgment is granted in Defendants' favor on this cause of action in relation

2    to the August 12, 2017 incident.

3                    2.    *Unreasonable Search and Seizure (Third Cause of Action)*

4    The Court construes this cause of action for this incident to be for the (1) unreasonable

5    search and seizure of the property in his van, and (2) citation without probable cause and false

6    arrest in relation to being cited and arrested for operating his costume business without license in

7    the parking lot of the United Artists Showcase Mall's parking garage.

8    First, Defendants contend that, because Plaintiff did not maintain a license to conduct

9    business within Clark County, the Defendant officers had probable cause to arrest Plaintiff on

10   August 12, 2017. For the reasons discussed in its malicious prosecution analysis for this incident

11   above, the Court agrees. See McCarty, 648 F.3d at 838.

12   Next, Defendants dispute Plaintiff's claim that, during this arrest, the Defendant officers

13   unlawfully searched his van and subsequently destroyed the property in violation of the Fourth

14   Amendment. They contend first that the search of Plaintiff's van fell within the search incident to

15   a lawful arrest exception to the warrant requirement. Second, they contend that the destruction of

16   property claim fails because Plaintiff does not provide any evidence that his property was

17   destroyed, nor has he identified the specific officers that destroyed his property.

18   The Court agrees with Defendants that the search of his vehicle was lawful pursuant to the

19   search incident to a lawful arrest exception. Indeed, "circumstances unique to the vehicle context

20   justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to

21   the crime of arrest might be found in the vehicle." Gant, 556 U.S. at 343; see also Menotti v. City

22   of Seattle, 409 F.3d 1113, 1153 (9th Cir. 2005) ("ample precedent would permit a search or seizure

23   incident to arrest"). It is undisputed that, on August 12, 2017, Plaintiff was using his van to rent

24   costumes to other street performers in the United Artists Showcase Mall's parking garage. Thus,

25   it was reasonable for the arresting officers to believe that the van and the costumes within it, were

26   evidence of an alleged crime for which Plaintiff was arrested for, operating a costume rental

27   business without the appropriate license issued by Clark County. Thus, the search of Plaintiff's

28   van was valid under the Fourth Amendment precedent.

1      The Court disagrees, however, that there is no evidence Plaintiff has presented that creates

2    genuine issues of fact that preclude granting summary judgment in their favor on Plaintiff's

3    destruction of property claim. Specifically, Plaintiff's verified SAC asserts that, after arresting

4    him, LVMPD officers entered and searched his van. In doing so, they kicked and dropped certain

5    of Plaintiff's "costumes, equipment, boxes," and destroyed "customized shelving and personal

6    belongings." ECF No. 88 at 10; see California Pro-Life Council, Inc., 507 F.3d at 1176 ("a verified

7    complaint may serve as an affidavit for purposes of summary judgment"). Multiple pieces of

8    "custom made costumes were substantially deteriorated and destroyed." ECF No. 88 at 23. Further,

9    not all his property was returned to him after the incident. Finally, the SAC asserts that Defendants

10    Kopf and Riddle personally engaged in this search.

11       Assuming facts in Plaintiff's favor, a jury could find that Defendants Kopf and Riddle

12    engaged in unnecessarily destructive behavior while they searched his van by damaging his

13    property, constituting unlawful behavior in violation of the Fourth Amendment. See United States

14    v. Ramirez, 523 U.S. 65, 71 (1998) ("Excessive or unnecessary destruction of property in the

15    course of a search may violate the Fourth Amendment, even though the entry itself is lawful.");

16    see also United States v. Jacobsen, 466 U.S. 109, 124 (1984) (providing that "at its inception," an

17    otherwise lawful seizure "can nevertheless violate the Fourth Amendment because its manner of

18    execution unreasonably infringes possessory interests protected by the Fourth Amendment's

19    prohibition on unreasonable seizures"). Indeed, a jury could find that the destruction of Plaintiff's

20    property was not "reasonably necessary to effectuate the performance" of Defendants' law

21    enforcement duties. San Jose Charter, 402 F.3d at 975.

22       Therefore, Defendants are granted summary judgment against Plaintiff's unreasonable

23    search and seizure cause of action as it relates to any citation and arrest without probable cause

24    claim. Yet, summary judgment is denied as to Plaintiff's destruction of property claim against

25    Defendants Kopf and Riddle.

26                3.  *First Amendment Retaliation (Fourth Cause of Action)*

27       The Court finds that Plaintiff's First Amendment Retaliation claim for the August 12, 2017

28    incident fails. The undisputed facts show that he was renting out costumes, and that he was cited

and arrested for doing so without a license. Plaintiff fails to show how this conduct is protected by the First Amendment. See Santopietro, 2023 WL 4568747, at *3; Nieves, 139 S. Ct. at 1722. Thus, Defendants are granted summary judgment in their favor on this claim for this incident as well.

v.  February 3, 2018

Defendants move for summary judgment against all the remaining causes of action underlying the February 3, 2018 incident, including malicious prosecution, unreasonable search and seizure, and First Amendment retaliation. The Court finds that Plaintiff only asserts these causes of action for this incident against Defendants O'Connell, McFarland, and Wedewer.

1.  *Malicious Prosecution (First Cause of Action)*

Defendants argue that Plaintiff's malicious prosecution claim fails for this incident because it is undisputed that there were no criminal charges brought against Plaintiff. And without a criminal proceeding, Plaintiff's malicious prosecution cause of action cannot move forward. The Court agrees. As previously stated, the institution of criminal proceedings against another who is not guilty of the offense charged is a prerequisite to a malicious prosecution claim. See LaMantia, 38 P.3d at 879-80. Otherwise, the claim becomes one for false arrest. See Lacey, 693 F.3d at 919-20. Here, it is undisputed that the District Attorney's Office did not file any criminal charges against Plaintiff stemming from the February 3, 2018 incident. Thus, because no criminal proceedings were instituted against him, this cause of action fails as a matter of law.

Summary judgment is therefore granted in Defendants O'Connell, McFarland, and Wedewer's favor on this cause of action.

2.  *Unreasonable Search and Seizure (Third Cause of Action)*

a.  Obstruction of a Public Sidewalk

Defendants argue that summary judgment is warranted on this claim for this day because the officers had probable cause to believe that Plaintiff and the other street performers were interfering with pedestrian traffic. They observed the street performers standing on the sidewalk for nearly twenty minutes and thus interfering with pedestrian passage. They were also near escalators, and the body camera footage depicts a heavy flow of pedestrian traffic. In return, Plaintiff argues he was street performing when he was seized. In fact, he was seized pursuant to

Defendant LVMPD's "Zero Tolerance" for street performers policy. Additionally, like the June 24, 2017 incident, Plaintiff contends that Defendants' reliance on the fact that he was standing in the general area of an escalator does not by itself constitute obstruction of pedestrian traffic— Defendants need to show he was standing at an escalator "buffer zone." The Defendant officers fail to show this was the case.

Assuming the facts in the light most favorable to Plaintiff, a jury could find that Plaintiff was arrested without probable cause for obstructing a public sidewalk. Plaintiff was standing on the sidewalk following the conclusion of a street performer protest. And where he and the other street performers were standing, according to Plaintiff's verified SAC, they were not obstructing the public sidewalk. In contrast, Defendants provide the testimony of officers who assert that Plaintiff and the other street performers were indeed causing a significant threat to or degradation of the safety of pedestrians. The Court, however, will not weigh the credibility of either parties' testimony. Zetwick, 850 F.3d at 441.[14] This is a task for the jury.

Therefore, the Court finds, assuming the facts in Plaintiff's favor, that Defendants O'Connell, McFarland, and Wedewer violated Plaintiff's Fourth Amendment rights against being arrested and cited without probable cause for obstructing a public sidewalk on February 3, 2018.

### b.   Conducting Business Without License

Separately, Defendants argue that the Defendant officers had probable cause to arrest Plaintiff for conducting business without a license after they learned from other street performers, and Plaintiff confirmed, that he had rented out costumes to them. Plaintiff also failed to provide the officers with a business license. Finally, because Plaintiff was placed under arrest for this conduct, the Defendant officers properly performed a search incident to lawful arrest. Plaintiff responds that, within ten days of the August 12, 2017 incident, Plaintiff obtained the necessary business license to conduct his costume catering business. And Plaintiff indeed presented a copy of this license to Defendant O'Connell on that day.

Assuming the facts in the light most favorable to Plaintiff, a jury could find that Plaintiff

---

[14] Separately, Defendant O'Connell's body camera footage only shows the moments immediately leading up to, and after, Plaintiff's arrest that day, i.e., Defendant O'Connell approaching Plaintiff from behind and handcuffing him.

was arrested and cited without probable cause for conducting a business without a license. It is undisputed that Plaintiff was arrested and cited for conducting business without a license on this day. Further, Plaintiff's verified SAC, construed liberally, asserts that he had a valid business license for his costume catering business on this date, and that Defendant O'Connell falsely stated he did not. See California Pro-Life Council, 507 F.3d at 1176. The Court finds, assuming the facts in Plaintiff's favor, that Defendants O'Connell, McFarland, and Wedewer violated Plaintiff's Fourth Amendment rights against being arrested and cited without probable cause for conducting a business without a license on February 3, 2018.[15]

Therefore, the Court denies Defendants summary judgment on this cause of action in Defendants O'Connell, McFarland, and Wedewer's favor for citing and arresting Plaintiff for conducting business without a license.[16]

### 3. *First Amendment Retaliation (Fourth Cause of Action)*

Defendants argue next that summary judgment is appropriate on this cause of action because Plaintiff fails to provide any facts that he was engaged in any protected activity during this incident. He was not dressed in costume and admitted that he had not yet begun his street performance. Further, even if he was engaging in First Amendment protected activity, the officers still had probable cause to arrest him. Plaintiff disagrees, asserting that he was street performing when he was seized. In fact, he was seized pursuant to Defendant LVMPD's "Zero Tolerance" for street performers policy.

The Court finds granting summary judgment on this claim in Defendants' favor on this cause of action is improper. Assuming the facts in Plaintiff's favor, a jury could find that he was

---

[15] Plaintiff's verified SAC states that "certain of Plaintiff's costumes and inventory were also deteriorated regarding the February 3, 2018 incident." The Court construes this a separate Fourth Amendment claim for the destruction of his property. See Fuller, 36 F.3d at 68; San Jose Charter, 402 F.3d at 975. Other than this assertion, Plaintiff fails to provide any other facts or evidence to support this claim. Therefore, the Court finds that Plaintiff's destruction of property claim under the Fourth Amendment fails.

[16] The Court construes Defendants' arguments, discussed below, for why they are entitled to qualified immunity for the Defendant officers' conduct underlying the Third Cause of Action asserted for this date to only apply to their enforcement of the obstructive use of a public sidewalk ordinance, and not for citing Plaintiff for conducting a business without a license. Even if this was not the case, the Court finds that its Fourth Amendment, qualified immunity analysis would apply to this conducting a business without a license citation with equal force. The Court would thus, for the reasons discussed below, deny qualified immunity to the Defendants for this conduct too.

engaged in a protected activity during the incident. Plaintiff was about to begin street performing when Defendant O'Connell, with help from Defendants McFarland and Wedewer, placed him under arrest. When he was arrested, Plaintiff was dressed as "Logan -- the Wolfy guy with the claws." Further, months earlier, in two prior incidents—May 5, 2017 and June 24, 2017—Plaintiff was undisputedly street performing when Defendant O'Connell detained him for obstructing a public sidewalk in that area. Defendant O'Connell was therefore familiar with Plaintiff and what Plaintiff did in that area when he observed Plaintiff. A reasonable jury could infer that, when Defendant O'Connell arrested Plaintiff on February 3, 2018, it was to retaliate against Plaintiff for street performing in these earlier incidents and to prevent him from doing so in this instance.[17]

Second, for the reasons provided above, there are genuine issues of fact as to whether the Defendant officers had probable cause to arrest Plaintiff, either for obstructing a public sidewalk or conducting a business without a license, on that date as well. Moreover, the Defendant officers detained other street performers who rented costumes from Plaintiff. They, however, were not cited and were set free only after they provided the Defendant officers with information on Plaintiff's costume catering business. Conversely, Plaintiff was arrested, cited, and taken to CCDC for a few hours until he was released on his own recognizance. He was also stopped and cited on the prior dates mentioned above. In the absence of probable cause to arrest Plaintiff, a jury could find that the Defendant officers' conduct that day was motivated by a desire to retaliate against Plaintiff for street performing.

Therefore, the Court finds, assuming the facts in Plaintiff's favor, that Defendants O'Connell, McFarland, and Wedewer violated Plaintiff's First Amendment rights by retaliating against him for street performing on February 3, 2018.

///

---

[17] Plaintiff asserts that Defendant O'Connell arrested him only minutes after Fox Channel 5 News and independent filmmakers covering the street performer protest left the area. While Plaintiff does not appear to assert that he was arrested for engaging in this protest, the Court notes that protesting is First Amendment protected activity. Collins v. Jordan, 110 F.3d 1363, 1371 (9th Cir. 1996) ("Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment."). The inference Plaintiff appears to wish the Court draw from this is that the Defendant officers waited to arrest him for being a street performer until after the new reporters and filmmakers left the area. To be sure, Plaintiff's SAC does not assert a First Amendment claim based on his right to protest for that date.

1

vi.   Qualified Immunity

2

Defendants seek qualified immunity in relation to all but the August 12, 2017 incidents.

3

1.   *Clearly Established Law*

4

In deciding whether officers are entitled to qualified immunity, courts, taking the facts in

5

the light most favorable to the nonmoving party, consider whether (1) the facts show that the

6

officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly

7

established at the time. Tarabochia, 766 F.3d at 1121. As discussed above, Plaintiff has already

8

demonstrated issues of fact as to whether the Defendants officers violated his Fourth and First

9

Amendment rights on May 5, 2017, June 24, 2017, and February 3, 2018. Assuming the disputed

10

facts underlying those dates in Plaintiff's favor, the Defendant officers' conduct violated his

11

constitutional rights.

12

Nevertheless, Defendants assert that the Defendant officers are entitled to qualified

13

immunity for their conduct against Plaintiff on these dates. First, Plaintiff cannot demonstrate that

14

the Defendants officers violated any clearly established Fourth or First Amendments rights.

15

Alternatively, the Defendants officers are entitled to qualified immunity for their reliance on

16

Chapter 16.11 of the Clark County Code, which they relied on to detain, cite, and arrest Plaintiff

17

for his presence on the Las Vegas Strip. In turn, Plaintiff asserts that the right to street perform

18

was clearly established by the time he interacted with any of the Defendant officers during these

19

incidents. The Defendant officers, Plaintiff asserts, constantly violated his clearly established right

20

to communicate with the public on the Strip, a public forum.

21

Under the clearly established prong, a court "consider[s] whether a reasonable officer

22

would have had fair notice that the action was unlawful." Id. at 1125 (internal quotation marks

23

omitted). "This requires two separate determinations: (1) whether the law governing the conduct

24

at issue was clearly established and (2) whether the facts as alleged could support a reasonable

25

belief that the conduct in question conformed to the established law." Green v. City & County of

26

San Francisco, 751 F.3d 1039, 1052 (9th Cir. 2014). While a case directly on point is not required

27

for a right to be clearly established, "existing precedent must have placed the statutory or

28

constitutional question beyond debate." Ashcroft v. al–Kidd, 563 U.S. at 731, 741 (2011).  Further,

1   while the right must be defined at "the appropriate level of generality[, a court] . . . must not allow

2   an overly generalized or excessively specific construction of the right to guide [its] analysis."

3   Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000).

4          Here, Defendants argue that there was no clearly established right against officers

5   conducting investigatory stops for suspected violation of the obstruction ordinance, the issuance

6   of an obstruction citation, or arrest for obstruction. In fact, there is no state or federal case law

7   addressing the application of an obstructive use ordinance. The Court rejects Defendants'

8   excessively specific construction of clearly established law in this case.

9          First, the Defendant officers had fair notice by May 5, 2017 that the warrantless arrest of

10  an individual requires probable cause. Blankenhorn v. City of Orange, 485 F.3d 463, 470-71 (9th

11  Cir. 2007). Further, police "'may not exercise the awesome power at their disposal to punish

12  individuals for conduct that is not merely lawful, but protected by the First Amendment.'"

13  Santopietro, 2023 WL 4568747, at *5 (quoting Velazquez v. City of Long Beach, 793 F.3d 1010,

14  1020 (9th Cir. 2015)). And finally, it was clearly established by November 2006 that there was a

15  "First Amendment right to be free from retaliatory law enforcement action even where probable

16  cause exists." Ballentine 28 F.4th at 66 (citing Skoog v. County of Clackamas, 469 F.3d 1221,

17  1235 (9th Cir. 2006) and Ford v. City of Yakima, 706 F.3d 1188, 1195-96 (9th Cir. 2013)).[18] Thus,

18  the Defendant officers had fair notice too that the First Amendment prohibited them from detaining

19  Plaintiff in retaliation for his protected speech, as detailed above, notwithstanding the existence of

20  probable cause.

21         Ultimately, the factual disputes underlying May 5, 2017, June 24, 2017, and February 3,

22  2018 incidents discussed above preclude a finding that the Defendants officers: (1) acted

23  reasonably stopping, arresting, and citing Plaintiff on these dates and (2) did not retaliate against

24

25         [18] In 2019, the U.S. Supreme Court abrogated Skoog and Ford but only to the extent they "held that a plaintiff
26  can prevail on a First Amendment retaliatory arrest claim regardless of whether probable cause existed for the arrest."
    Ballentine, 28 F.4th at 65 n.1. "A plaintiff either 'must plead and prove the absence of probable cause for the arrest'
27  or that the offense at issue is one for which 'officers have probable cause to make arrests, but typically exercise their
    discretion not to do so.'" Id. Even then, it was of no moment in Ballentine that an incident was thoroughly investigated,
28  presented to a neutral magistrate, and supported by probable cause. 28 F.4th at 67. Instead, by that time, in 2013, a
    reasonable officer would have had fair notice that taking adverse action against the plaintiffs for the content of their
    speech was prohibited, notwithstanding probable cause. Id.

1   Plaintiff in violation of his First Amendment rights in stopping, arresting, or citing him
2   notwithstanding the existence of probable cause. "Whether the defendants violated a constitutional
3   right and whether the right was clearly established at the time of the violation are questions of law.
4   If genuine issue[s] of material fact exist[ ] that prevent [ ] a determination of qualified immunity
5   at summary judgment, the case must proceed to trial." Sandoval v. Las Vegas Metro. Police Dep't,
6   756 F.3d 1154, 1160 (9th Cir. 2014). Thus, these factual disputes prevent the Court from, at this
7   stage, deciding whether qualified immunity is appropriate. Reed, 863 F.3d at 1207 n.4; Sandoval,
8   756 F.3d at 1166 (overruling a district court's finding of qualified immunity because by "weighing
9   the evidence in favor of the officers . . . the district court unfairly tipped the reasonableness inquiry
10   in the officer's favor.").

11   2.   *Reliance on Clark County Code 16.11*

12   In any event, Defendants argue that the Defendant officers reasonably relied on Clark
13   County Code to stop, arrest, and cite Plaintiff.

14   It is certainly true that "an officer who acts in reliance on a duly-enacted statute or
15   ordinance is ordinarily entitled to qualified immunity." Grossman v. City of Portland, 33 F.3d
16   1200, 1209 (9th Cir. 1994). But as Defendants acknowledge, Plaintiff does not challenge the
17   constitutionality of Clark County Code 16.11. Rather, he challenges the unconstitutional conduct
18   and basis underlying the Defendant officers' enforcement of Clark County Code 16.11 against
19   him. As Grossman plainly puts it, where "an officer who unlawfully enforces an ordinance in a
20   particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds
21   the bounds of the ordinance," that officer is not "entitled to immunity even if there is no clear case
22   law declaring the ordinance or the officer's particular conduct unconstitutional." Id. at 1210.

23   Here, assuming facts in Plaintiff's favor, the Defendant officers enforced Clark County
24   Code 16.11 in a particularly egregious way and exceeded its bounds when they stopped, arrested,
25   and cited him on May 5, 2017 and February 3, 2018 in violation of his clearly established Fourth
26   Amendment rights, as described above. Further, assuming the facts in the light most favorable to
27   Plaintiff, the Defendant officers also enforced Clark County Code in a particularly egregious way
28   and exceeded its bounds on May 5, 2017, June 24, 2017 and February 3, 2018 when they used

Chapter 16.11 to retaliate against him for street performing in violation of his clearly established First Amendment rights notwithstanding the existence of probable cause.

Therefore, the Court: (1) denies Defendants Owensby and O'Connell summary judgment in their favor on Plaintiff's Third Cause of Action premised on a citation without probable cause claim on May 5, 2017; and (2) denies Defendants O'Connell, McFarland, and Wedewer summary judgment on the Third Cause of Action in their favor for citing and arresting Plaintiff for obstructing a public sidewalk on February 3, 2018. Additionally, it (1) denies Defendants' motion for summary judgment in their favor as to Plaintiff's Fourth Cause of Action for First Amendment Retaliation against Defendants Owensby and O'Connell for the May 5, 2017 incident; (2) denies Defendants' motion for summary judgment in their favor as to Plaintiff's Fourth Cause of Action for First Amendment Retaliation against Defendants O'Connell and McFarland for the June 24, 2017 incident; and (3) denies Defendants O'Connell, McFarland, and Wedewer summary judgment in their favor on Plaintiff's First Amendment Retaliation claim stemming from the February 3, 2017 incident.

### v.   Monell Liability

The Court now addresses whether there are no genuine issues of fact that warrant dismissing Plaintiff's Monell claim against Defendant LVMPD. Defendants seek summary judgment against Plaintiff's Monell liability claim. This claim is based on the alleged conduct that the Defendant officers engaged in during these incidents. First, they argue that, if the Court finds no constitutional violation, then Plaintiff's Monell claim fails. Second, even if there was a constitutional violation, Defendants contend Plaintiff has no evidence Defendant LVMPD maintains an unconstitutional policy that resulted in these constitutional violations. Contrary to Plaintiff's assertions in the SAC, he provides no evidence that LVMPD officers have a "Zero-Tolerance" policy of street performers. Nor does he provide any other evidence of a policy, widespread practice or custom, or that his injuries were caused by a person with final policymaking authority. In fact, some street performers had never, prior to the February 3, 2018 incident, had encounters with law enforcement while street performing on the Strip.

The Court rejects both of Defendants' arguments. First, the Court finds that, assuming the

facts in Plaintiff's favor, Plaintiff was subject to constitutional rights violations, namely his First Amendment right to street perform, pursuant to the Defendant officers' conduct on May 5, 2017, June 24, 2017, and February 3, 2018.

Second, the Court finds that there is evidence in the record creating genuine issues of fact that Defendant LVMPD has official policies or established customs that make it liable for these violations. Plaintiff asserts that there is evidence that Defendant LVMPD has commissioned a "Zero-Tolerance" policy for street performers on the Strip which caused him to suffer constitutional violations. This is because on May 5, 2017, Defendant O'Connell stated there was zero tolerance for street performers. If a street performer is not constantly moving with pedestrian traffic on the Strip, LVMPD officers will cite them, and if they continue to "obstruct," they will be arrested. It was this policy, Plaintiff asserts, that resulted in his First Amendment rights being deprived.

Here, there are genuine issues of fact as to whether Defendant LVMPD has a policy of stopping, arresting, and citing street performers who street perform on the Strip. First, it is undisputed that on May 5, 2017, Defendant O'Connell told Plaintiff that he "cannot be out here on the sidewalk obstructing pedestrian traffic"; that what he was doing—street performing—was "obstructing pedestrian traffic"; that Plaintiff could not stop pedestrians on the Strip; and that "if someone wants a picture . . ., take the picture and keep on moving." It is also undisputed that he told the other detained street performers, that there was "zero tolerance" for them standing on the sidewalk. Furthermore, while Defendant Owensby may have told Plaintiff he was cited for obstructing the public sidewalk, neither he nor the other officers on the scene objected to Defendant O'Connell's restrictions on street performing behavior on the Strip. In fact, other officers are heard on Defendants Owensby's body camera informing Plaintiff of this policy.

Yet, it is well known that the Las Vegas Strip's sidewalks "are public fora," and that street performing, including soliciting tips, on the Strip is protected under the First Amendment. See Santopietro, 73 F.4th at 1024-25; see also id. at 1021 (finding that Defendant LVMPD entered into a 2010 "an Interim Stipulated Memorandum of Understanding" with other street performers where it agreed that, inter alia, "[s]treet performing . . . is not a per se violation of any of the codes or

statutes being challenged in [the] action," and "[t]he entirety of Chapter 6 of the Clark County Code, the business licensing codes, as written, is inapplicable to the act of street performing.").[19] Assuming the facts in Plaintiff's favor, moving with traffic would severely restrict Plaintiff's ability to street perform. Not to mention that Defendant Owensby told him that soliciting tips as a street performer was not allowed without a business license. A jury could find that these restrictions would severely infringe on his First Amendment right to street perform on the Strip.

Indeed, Plaintiff and the other street performers were similarly stopped, arrested, or cited on June 24, 2017 and February 3, 2018 for street performing related conduct. And Plaintiff's verified SAC asserts that he has not returned to street perform on the Strip out of concern of being targeted by LVMPD officers. A jury could thus find that it was Defendant LVMPD's policy to remove street performers from the Strip that caused Plaintiff to suffer the constitutional violations discussed above, and not any reasonable or constitutional enforcement of the obstruction of a public sidewalk ordinance against him and the other street performers. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

In sum, a jury could find that the officers' conduct during the May 5, 2017, June 24, 2017, and February 3, 2018 incidents stemmed from an unconstitutional LVMPD policy or custom targeting street performers on the Strip.

### c.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks summary judgment against Defendant O'Connell for (1) malicious prosecution for his conduct on May 5, 2017 and February 3, 2018 and for (2) unreasonable searches and seizures for his conduct on June 24, 2017, August 12, 2017, and February 3, 2018. Separately, Plaintiff seeks summary judgment against Defendant LVMPD for Monell liability due to Defendant O'Connell's conduct on these dates.

i.  May 5, 2017, June 24, 2017, August 12, 2017, and February 3, 2018

---

[19] The record before the Court does not indicate whether this interim MOU is still in force or whether the Defendant officers received any training based on this MOU or subsequently related MOU.

1   The Court denies Plaintiff's motion for summary judgment in his favor as to his malicious

2   prosecution cause of action against Defendant O'Connell. First, the Court finds that, for the reasons

3   discussed above, genuine issues of fact exist as to whether Defendant O'Connell maliciously

4   prosecuted Plaintiff for his street performing conduct on May 5, 2017. Second, as discussed above,

5   Plaintiff's malicious prosecution claim fails as a matter of law for the February 3, 2018 incident

6   because criminal proceedings were not instituted against Plaintiff after the incident.

7   The Court next denies Plaintiff's motion for summary judgment in his favor as to his

8   unreasonable search and seizure cause of action against Defendant O'Connell. First, for the reasons

9   discussed above, the Court finds that there are issues of disputed fact related to whether the officers

10   had probable cause to arrest Plaintiff on June 24, 2017. Second, the Court denies summary

11   judgment in Plaintiff's favor as to the August 12, 2017 incident. Other than stating in conclusory

12   fashion that an unreasonable search and seizure occurred that day, Plaintiff fails to raise any basis

13   as to why he is entitled to summary judgment on this claim for that date. Lastly, for the reasons

14   discussed above, the Court denies Plaintiff summary judgment in his favor as to his claim for

15   unreasonable search and seizure for the Defendant officers' conduct on February 3, 2018.

16   ii.   Monell Liability

17   Plaintiff asserts he is entitled to summary judgment against Defendant LVMPD for

18   Defendant O'Connell's official capacity conduct of acting pursuant to a "policy to cite and then

19   arrest street performers who don't 'keep moving' which is a wide spread custom practice"

20   LVMPD. Defendants raise similar arguments against granting summary judgment in Plaintiff's

21   favor as they do in their motion for summary judgment against this claim. For the reasons discussed

22   above, the Court finds that factual disputes undergird Plaintiff's Monell claim that prohibit this

23   Court from deciding the Monell claim at this stage.

24   ///

25   ///

26   ///

27   ///

28   ///

## VI.    CONCLUSION

**IT IS ORDERED** that Defendants Christopher J. Kopf, Las Vegas Metro Police Department, Andre A. McFarland, Christopher R. O'Connell, Clint W. Owensby, Jonathan M. Riddle, and Dillon A. Wedewer's MOTION for Summary Judgment (ECF No. 111) is **GRANTED** in part and **DENIED** in part.

It is **GRANTED** as to the Second Cause of Action for Deprivation of Property Without Due Process as to the May 5, 2017, June 24, 2017, August 12, 2017, and February 3, 2018 incidents.

It is **DENIED** as to Plaintiff's <u>Monell</u> claim against Defendant LVMPD.

Further:

- As to the First Cause of Action for Malicious Prosecution:

  - It is **DENIED** as to the May 5, 2017 Incident against Defendants Owensby and O'Connell. It is **GRANTED** as to the May 5, 2017 Incident against all other Defendants.

  - It is **GRANTED** as to the August 12, 2017 and February 3, 2018 incidents.

- As to the Third Cause of Action for Unreasonable Search and Seizure:

  - It is **GRANTED** as to the May 5, 2017 Incident against all Defendants for detaining him under the basis of reasonable suspicion. It is **DENIED** as to the May 5, 2017 Incident against Defendants Owensby and O'Connell  for citing him without probable cause.

  - It is **DENIED** as to the June 24, 2017 Incident against Defendants O'Connell and McFarland for arresting Plaintiff without probable cause. It is **GRANTED** as to the June 24, 2017 against all other Defendants.

  - It is **GRANTED** as to the August 12, 2017 Incident against all Defendants based on citation without probable cause.

  - It is **DENIED** as to the August 12, 2017 Incident against Defendants Kopf and Riddle based on the destruction of Plaintiff's property. It is **GRANTED** as to the August 12, 2017 Incident against all other Defendants based on the destruction of

Plaintiff's property.

- It is **GRANTED** as to the February 3, 2018 Incident against all Defendants based on the destruction of Plaintiff's property.

- It is **DENIED** as to the February 3, 2018 Incident against Defendants O'Connell, McFarland, and Wedewer for arresting and citing Plaintiff for obstructing a public sidewalk and for conducting a business without a license. It is **GRANTED** as to the February 3, 2018 Incident against all the other Defendants based on arresting and citing Plaintiff.

- As to the Fourth Cause of Action for First Amendment Retaliation

  - It is **DENIED** as to the May 5, 2017 Incident against Defendants Owensby and O'Connell. It is **GRANTED** as to the May 5, 2017 Incident against all other Defendants.

  - It is **DENIED** as to the June 24, 2017 Incident against Defendants O'Connell and McFarland. It is **GRANTED** as to the June 24, 2017 Incident against all other Defendants.

  - It is **GRANTED** as to the August 12, 2017 Incident against all Defendants.

  - It is **DENIED** as to the February 3, 2018 Incident against Defendants O'Connell, McFarland, and Wedewer. It is **GRANTED** as to the February 3, 2018 Incident against all the other Defendants.

**IT IS FURTHER ORDERED** that Plaintiff Gerald R Lechner's MOTION for Partial Summary Judgment's (ECF No. 115) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file a joint pretrial order by October 20, 2023.

**DATED:** September 30, 2023.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**